FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 3 0 2011

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TOBY J. SUTTON                                                                    PLAINTIFF

V.                          NO. 3:11-CV-00123-JLH

ARKANSAS STATE UNIVERSITY;
PATRICIA BAILEY, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS
VICE-CHANCELLOR OF ACADEMIC           This case assigned to District Judge Holmes
AND STUDENT AFFAIRS;                  and to Magistrate Judge Volpe
KELLIE THOMAS, INDIVIDUALLY AND
IN HER OFFICIAL CAPACITY AS
DIRECTOR OF INSTRUCTION                                                          DEFENDANTS

## PLAINTIFF'S COMPLAINT

Comes now Plaintiff, Toby J. Sutton, by and through his attorneys, the Mixon Law Firm, and for his Complaint, states as follows:

### PARTIES

1.  Plaintiff Toby J. Sutton is a resident of 609 Church Street, Weiner, Poinsett County, Arkansas 72479.

2.  Defendant Arkansas State University ("ASU") is a state-supported institution of higher education of the State of Arkansas with its principal location in Jonesboro, Craighead County, Arkansas. Defendant ASU also operates a branch in Mountain Home, Baxter County, Arkansas known as Arkansas State University--Mountain Home.

3.  Defendant, Patricia Bailey, is the Vice Chancellor of Academic and Student Affairs at ASU--Mountain Home. In this position, she is responsible for the

administration of the instructional programs in their various divisions, including oversight of all instructional and academic personnel. Defendant Bailey was a direct decision maker in the termination of plaintiff. This action is being brought against defendant Bailey individually and in her official capacity.

4. Defendant, Kellie Thomas, was the Director of Instruction at ASU--Mountain Home. This position was created in July 2010 and it took defendant Thomas out of the classroom and made her responsible for the instructional aspects of ASU-Mountain Home. It is believed that this position was created to relieve some of defendant Bailey's workload. Plaintiff is without knowledge as to whether defendant Thomas is still in this position. Defendant Thomas was present at all of the meetings with plaintiff concerning the Funeral Science Program and she was a direct decision maker in his termination. This action is being brought against defendant Thomas individually and in her official capacity.

## JURISDICTION

5. This action is brought pursuant to 42 U.S.C. § 1983 for violation of plaintiff's rights under the due process clause of the Fourteenth Amendment to the United States Constitution against defendants Bailey and Thomas in their individual and official capacities. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and (4). Plaintiff asserts pendant state claims against all of the defendants, including ASU, for breach of contract and violation of the Arkansas Whistle-Blower Act, Ark. Code Ann. § 21-1-601 et seq. (Repl. 2004). This Court has supplemental jurisdiction over these state law claims and defendant ASU pursuant to 28 U.S.C. § 1367(a) because these claims are

"so related" to the § 1983 violations that they form part of the same case. Venue is proper based upon the domiciles of the parties within the territory of this court.

## BACKGROUND

6.  Defendant ASU's former Funeral Science Director/Instructor, Ron Schofield, retired from his position in May 2010. The position opening was advertised and defendant Bailey selected plaintiff for an interview. At the interview, defendant Bailey questioned plaintiff about his relationship with Roller Funeral Home. Plaintiff was a former employee of Roller Funeral Home and was still in contact with some of its current employees.

7.  Roller Funeral Home is a major donor to defendant ASU. The program is titled the Roller Funeral Science Program, and one-half of the advisory board members are affiliated with Roller. Defendant Bailey's office is located in Roller Hall.

8.  Plaintiff was hired by defendant Bailey and he entered into a contract with defendant ASU on May 28, 2010. A copy of plaintiff's contract is attached to this complaint as Exhibit "A." The contract employed plaintiff as an instructor for defendant ASU at a salary of $41,000 for nine months to end on May 13, 2011.

9.  Plaintiff was employed as Director of the Funeral Science Program at ASU--Mountain Home. He holds associate, bachelor, and master degrees and has previous experience teaching at ASU–Mountain Home and working for three different funeral homes, including Roller Funeral Home. His resume is attached to this complaint as Exhibit "B."

10. At the time plaintiff was hired, Matthew Buel was an adjunct instructor for defendant ASU and worked as an embalmer at Roller Funeral Home. Mr. Buel had applied for plaintiff's position as the Funeral Science Director. Unlike plaintiff, Mr. Buel does not hold a master's degree. Prior to moving to Mountain Home, plaintiff learned from a Roller Funeral Home employee that Mr. Buel was disappointed that he did not even receive an interview for plaintiff's position. After plaintiff began his work as director, he was told by both defendant Bailey and defendant Thomas on different occasions that he needed "to keep an eye" on Mr. Buel.

11. Prior to beginning his contract, plaintiff had meetings with defendant ASU's personnel and others. For example, plaintiff met with his department chair, Defendant Thomas, and Defendant Bailey on July 6, 2010 to discuss a new embalming laboratory. He participated in these meetings prior to being paid because he was excited about and dedicated to his new position. In the Fall 2010 term, plaintiff taught Introduction to Embalming, Pathology, Practicum I, Practicum II, Orientation to Funeral Service, and independent studies in Funeral Directing and Mortuary Chemistry. He was scheduled for the Spring 2011 term to teach Management and Merchandising, Embalming I, Practicum I, Practicum II, and Comprehensive Review.

12. When plaintiff began teaching, the Funeral Science Program did not have an operational laboratory nor had supplies been ordered for the laboratory. Although this was supposed to be completed before plaintiff began his position, nothing had been done. Defendants had not even selected a location for the lab. Therefore, plaintiff had to begin securing equipment donations in order for defendant ASU to have a functional lab.

13. The Funeral Science Program was offered by defendant ASU on three campuses, but the faculty was located only at the Mountain Home campus. The American Board of Funeral Science Education ("ABFSE") requires that accredited Funeral Science programs have a qualified faculty member or a certified preceptor observe student embalming cases.[1] In order to comply with this standard, plaintiff had also planned to drive to other locations to observe students doing embalming work. Several of plaintiff's students were surprised when plaintiff advised them of his plans to travel and observe their embalming work. Although it was required by ABFSE standards, plaintiff soon found out that defendants did not previously follow this standard and failed to have a qualified faculty member or preceptor observe student embalming cases at its locations in Jonesboro and Beebe.

14. Plaintiff also assisted in securing information to be used in a Funeral Science Program self-study.[2] The self-study was to be completed so that the ABFSE could evaluate defendant ASU's Funeral Science program. Early in the semester, plaintiff asked defendant Thomas for embalming case reports verifying that his Practicum II students had completed the requirements of Practicum I. Plaintiff's Practicum II students had grades listed on their transcripts for Practicum I, but plaintiff could not find any

---

[1] See American Board Funeral Science Education and the Committee on Accreditation (2010). *Accreditation and Policy Manual* (Chapter 10, Standard 6.4.5, Page 9-6). St. Joseph, Missouri: American Board Funeral Science Education and the Committee on Accreditation.

[2] A self-study is a formal process during which an educational institution or program critically examines its structure and substance, judges a program's overall effectiveness relative to its mission, identifies specific strengths and deficiencies, and indicates a plan for necessary modifications and improvements. The process should include a consideration of external factors influencing educational directions as well as an assessment of the extent to which the program is in compliance with established accreditation Standards. See American Board Funeral Science Education and the Committee on Accreditation (2010). *Accreditation and Policy Manual* (Chapter 5, Section 2, Page 4-4). St. Joseph, Missouri: American Board Funeral Science Education and the Committee on Accreditation.

student embalming case reports. These reports and proof of the observations were required for the self-study in preparation for an accreditation team visit. Defendant Thomas could not provide the student case reports. According to ABFSE standards, embalming case reports records are to be kept by the accredited university for at least seven (7) years.[3] The next time plaintiff asked defendant Thomas about the reports, she stated that someone needed to contact Ron Schofield to find out their location. Defendant Thomas took no further action in securing the student records, even though the ABFSE would need to see written documentation and substantial evidence that the requirements were met.[4]

15. Defendant ASU had been collecting a fee of $100 from every student who enrolled in Practicum II in the Funeral Science Program. This fee was to pay the expense of having a faculty member to observe a student completing an embalming in a funeral home setting at a remote site, a requirement for the class. Plaintiff is under the belief that defendants are still collecting such fee.

16. On October 21, 2010, plaintiff questioned Karen Hopper, defendant ASU's Associate Vice Chancellor for Research, Special Projects and Distance Learning, about the use of the fees that had been collected and the names of any faculty members paid. Plaintiff needed this information because it was necessary to prove compliance with ABFSE standards.

---

[3] See American Board Funeral Science Education and the Committee on Accreditation (2010). *Accreditation and Policy Manual* (Chapter 10, Standard 6.4.11, Page 9-6). St. Joseph, Missouri: American Board Funeral Science Education and the Committee on Accreditation.
[4] See American Board Funeral Science Education and the Committee on Accreditation (2010). *Accreditation and Policy Manual* (Chapter 10, Standard 6.4.5, Page 9-6). St. Joseph, Missouri: American Board Funeral Science Education and the Committee on Accreditation

17. On the same day, Ms. Hopper sent an email to defendant Bailey and her assistant, Katy Page, requesting the travel records to verify that a faculty member was paid and employee data forms to show any designated faculty members that were used to observe student embalmings. See Attached Exhibit "C." Plaintiff did not hear anything further from Ms. Hopper of defendant Bailey about this issue.

18. On November 2, 2010, plaintiff was told by Katy Page, defendant Bailey's assistant, that neither she nor Wayanna Dockins, defendant ASU's Controller, could find any documentation showing that travel costs or any faculty member was paid by the $100 fee collected. Ms. Page then asked plaintiff whether that could cause defendant ASU to lose the accreditation of its Funeral Science Program. Plaintiff responded that he did not know.

19. Later that same day, plaintiff was notified by an email sent from Ms. Page, defendant Bailey's assistant, that his attendance was required at a meeting the next day. He was not given any notice of the subject of the meeting. He attended the meeting on November 3, 2010 to find defendant Bailey, defendant Thomas, and the human resources director present. Plaintiff was told by defendant Bailey that he was terminated immediately. He was not given the opportunity to respond to anything prior to the termination. Defendant Bailey, defendant Thomas and the human resources director then closed the door and continued on with their meeting. Plaintiff was escorted by a security guard to his office to collect his personal things. He found the CPU unit to his computer already removed without his knowledge, and therefore, plaintiff had no access to his electronic files. He was then escorted off campus.

20. The reason given by defendant Bailey for the termination was a Facebook page entry by plaintiff written on June 20, 2010. The entry was taken from a chat of plaintiff with his closest friends showing his excitement over the new job he would assume two months later with defendant. Defendant Bailey fired plaintiff because he wrote that he "hopes this teaching gig works out. Guess I shouldn't have cheated through mortuary school and faked people out. Crap!" The full joking chat is attached to this complaint as Exhibit "D." The Facebook chat was not public. It was only accessible by his Facebook "friends." Plaintiff had never been asked about or confronted with this at any prior time.

21. Although Mr. Buel was not even selected for an initial interview by defendant Bailey for the Funeral Science director position, he promptly replaced plaintiff. No further search was conducted for this position. At the time, Mr. Buel was also one of plaintiff's Facebook friends. Therefore, he had access to view plaintiff's Facebook post.

22. Plaintiff's employment contract with defendant ASU, attached as Exhibit "A," contains the following provision requiring cause for termination:

> This contract takes precedence over any agreement or contracts made prior to this date, and may be terminated at any time for adequate cause including but not being limited to admission and/or conviction of a felonious act, moral turpitude, professional incompetence, unprofessional conduct, unauthorized use or abuse of University property, insubordination, excessive absenteeism, theft, physical/mental disability that prevents the performance of required activities, or the neglect of professional obligations.

23. Defendant ASU had adopted and placed in effect the ASUMH Faculty Handbook of Policies and Procedures which further governs the contractual relationship

8

of plaintiff and defendant ASU. The handbook contains the following paragraph entitled Dismissal of Faculty:

> A faculty member may be dismissed for adequate cause at any time. Such causes include, but are not limited to, admission of and/or conviction for a felonious act, professional incompetence, neglect of professional obligations, insubordination, sexual harassment, or repeated poor overall performance evaluations.

24. The handbook also contains a paragraph on Retention of Faculty requiring defendant ASU, through its vice chancellor for academic and student affairs (defendant Bailey), to "provide the faculty member with a written notice of the university's intention" if defendant ASU desires "not to renew employment of a faculty member." A copy of pages IV-1 and IV-2 containing these provisions is attached to this complaint as Exhibit "E."

25. At the time of plaintiff's termination, it was the well-established policy of the State of Arkansas that an individual should not be terminated for acts done for the good of the public. Further, the Arkansas Whistle-Blower Act was in effect prohibiting termination for participating in an investigation, inquiry, or administrative review or for engaging or intending to engage in activities protected under the act. Ark. Code Ann. § 21-1-601 et seq. (Repl. 2004).

## CAUSES OF ACTION

26. Plaintiff had a property interest in his employment with defendant ASU protected by the due process clause of the Fourteenth Amendment to the United States Constitution. Plaintiff's contract was terminated before the expiration of its term and

could only be terminated for cause. Plaintiff had a legitimate expectation of continued employment.

27. Plaintiff was given no hearing prior to his termination and no notice of any charges, no explanation of evidence, and no opportunity to present his side. Defendants, Patricia Bailey and Kellie Thomas, failed to follow their own procedures and ignored clearly established constitutional rights of which a reasonable person in their position would know.

28. Defendants, Patricia Bailey and Kellie Thomas, have violated plaintiff's rights to due process under the Fourteenth Amendment by failing and refusing to give him a hearing prior to his termination.

29. Defendants, Patricia Bailey and Kellie Thomas, have acted maliciously, without due process of law, and in violation of their own policies and established constitutional rights by depriving plaintiff of his property interest.

30. The stated reason for plaintiff's termination was not a cause recognized under the contract, and plaintiff was given no opportunity to respond to the charge. Defendants breached plaintiff's contract with defendant ASU by failing to give plaintiff prior notice and a hearing and by terminating plaintiff without cause recognized under the contract.

31. The stated reason for plaintiff's termination was not the real reason for defendants Bailey and Thomas terminating plaintiff. Plaintiff was terminated because he was participating in an administrative review that uncovered defendants' actions of collecting a fee for Practicum II and not supplying the service connected with the fee and

of failing to require students to complete embalming case reports. The failure of not requiring students to complete embalming case reports is a major violation of ABFSE standards. Ethically, plaintiff would have had a duty to report such a violation to the ABFSE in the self-study report. Defendants did not want to risk losing the accreditation of its Funeral Science program and therefore, they breached plaintiff's contract with defendant ASU by terminating him in violation of the public policy of the State of Arkansas and the Arkansas Whistle-Blower Act. Plaintiff was terminated because he engaged or intended to engage in an activity protected under the Arkansas Whistle-Blower Act and not because of his own misconduct or poor job performance.

## REMEDIES

32. Plaintiff was terminated in violation of his rights under the due process clause of the Fourteenth Amendment to the United States Constitution, in breach of the contract of the parties, and in violation of the public policy of the State of Arkansas and the Arkansas Whistle-Blower Act. As a direct and proximate result of these actions of defendants, plaintiff has suffered the loss of his professional position and the wages and benefits connected to that position.

33. Plaintiff is entitled to the order and judgment of this court reinstating plaintiff to his employment with defendant ASU, enjoining defendants Bailey and Thomas from terminating plaintiff without a pre-termination hearing and related due process rights and from terminating without cause recognized under the contract, and awarding plaintiff back pay, benefits, future pay and benefits until reinstatement, and attorney's fees and expenses of litigation. Plaintiff is further entitled to recover lost

income in the future and damages to his reputation due to the wrongful termination. Plaintiff asserts that all of plaintiff's monetary damages are in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

WHEREFORE, plaintiff Toby J. Sutton prays that this court grant him a declaratory judgment declaring that defendants Bailey and Thomas have violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution; against all defendants for breach of contract, and for violation of the Arkansas Whistle-Blower Act, Ark. Code Ann. § 21-1-601 et seq. (Repl. 2004); reinstating plaintiff to his employment with defendant ASU; enjoining defendants Bailey and Thomas from terminating plaintiff without a pre-termination hearing and related due process rights and from terminating without cause recognized under the contract; awarding plaintiff back pay, benefits, future pay and benefits until reinstatement, and attorney's fees and expenses of litigation; and that plaintiff recover lost income in the future and damages to his reputation due to the wrongful termination in an amount in excess of the amount required for federal court jurisdiction in diversity of citizenship cases. PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully Submitted,

Donn Mixon (76079)
Rebecca Worsham (2009260)
MIXON LAW FIRM
Attorneys for Plaintiff
P.O. Box 1442
Jonesboro, Arkansas 72403
870.935.8600; 870.935.8622 (f)
dmixon@mixonlawfirm.com
rworsham@mixonlawfirm.com

By: /s/   Rebecca Worsham
        Rebecca Worsham

## VERIFICATION

STATE OF ARKANSAS
COUNTY OF CRAIGHEAD

Toby J. Sutton, first being sworn, states under oath that he has read the above and foregoing pleading, understands its contents, and that the facts set forth in the pleading are true and correct to the best of his knowledge, information, and belief.

_____
Toby. J. Sutton

Subscribed and sworn before me this June 30, 2011.

_____
NOTARY PUBLIC

My commission expires: 11-17-20

OFFICIAL SEAL - #12379908
REBECCA WORSHAM
NOTARY PUBLIC-ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES: 11-17-20

OFFICIAL SEAL - #12379908
REBECCA WORSHAM
NOTARY PUBLIC-ARKANSAS
CRAIGHEAD COUNTY
MY COMMISSION EXPIRES: 11-17-20

13